UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FRANCES DU JU,

               Plaintiff,

   v.

MAURICE LACOMBE, et al.,

               Defendants.

CASE NO. C18-5309 BHS

ORDER GRANTING DEFENDANT AIRBNB'S MOTION TO COMPEL ARBITRATION AND GRANTING STATE DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendant Airbnb, Inc.'s ("Airbnb") motion to compel arbitration, Dkt. 33, and Defendants the State of Washington ("State") and John and Jane Doe employees at the Washington Court of Appeals, Division II's ("Court Defendants") (collectively "State Defendants") motion to dismiss for failure to state a claim, Dkt. 15. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants the motions for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL HISTORY

On April 20, 2018, Plaintiff Frances Du Ju ("Ju") filed a complaint against Maurice Lacombe ("Lacombe"), Airbnb, and the State Defendants. Dkt. 1. Ju's allegations arise

ORDER - 1

from a state court judgment in an unlawful detainer action, which evicted her, and a subsequent appeal, which affirmed the judgment. Dkts. 1, 47.

A. **Airbnb & Lacombe**

Airbnb is a popular residential rental service that uses an online platform to connect travelers to accommodations. Dkt. 33 at 4. To join and access Airbnb's online platform, would-be users must create an Airbnb account and agree to terms of service, which include a mandatory arbitration clause. Dkt. 33-3. According to Airbnb's business records, Ju joined Airbnb on January 30, 2015, at which time she assented to Airbnb's terms of service. *Id.* Ju periodically agreed to later updates to the terms of service. *Id.*

In October 2015, Ju used Airbnb's platform to book a room in Lacome's residence in Vancouver, Washington. Dkt. 33 at 3. Ju reserved Lacombe's room for the nights of October 8 to October 27, 2015. *Id.* At the end of Ju's stay, Ju and Lacombe negotiated to temporarily extend Ju's stay, and Lacombe agreed to allow Ju to pay Lacombe in cash "at the end of your stay for the extended days." Dkt. 1, ¶ 4.4.

In the months that followed, Ju and Lacombe disputed over various issues typical of a landlord-tenant relationship, such as rent payment and amenity availability, and somewhat atypical issues, such as Lacombe's alleged patronization of prostitutes. Dkt. 1. Ju's occupancy of the room continued for months, and ultimately Lacombe retained an attorney and filed an unlawful detainer action in order to evict her. Dkt. 47 at 31.

B. **Washington Court Proceedings**

Lacombe brought the unlawful detainer action in Clark County Superior Court for the State of Washington under case number 16-2-00719-1. Dkt. 1, ¶ 4.1(a). Ju answered

Lacombe's unlawful detainer complaint, responded to orders to show cause, briefed issues for the court, attended hearings, and otherwise participated in the proceedings. On April 15, 2016, the Honorable Gregory M. Gonzales found for Lacombe and issued a writ of restitution that restored the residence to Lacombe. Ju filed a motion for reconsideration, arguing that the writ was unlawful. The court denied Ju's motion for reconsideration. Ju left the residence under court order on April 26, 2016.

Ju appealed the judgment and writ to the Washington Court of Appeals, Division II ("COA"), under case number 48992-9-II. Dkt. 1, ¶ 4.1(b). On appeal, Ju assigned error to Judge Gonzales's evidentiary and legal rulings, but also argued that "Frances Ju's 7th and 14th Amendment and Wash. Const. art. I, §§ 3 and 21 Rights were Unconstitutionally Infringed" by the judgment. Dkt. 47 at 40.[1] On August 22, 2017, the COA affirmed the judgment in its entirety. *Lacombe v. Ju*, 200 Wn. App. 1028 (2017) (unpublished). Ju moved for reconsideration and to publish, Dkt. 1, ¶ 4.34, arguing that the opinion "does not comply with the 7th and 14th Amendment, Wash. Const. art. I, §§ 3 and 21, Washington State statutes, Court rules, and case law," Dkt. 47 at 74. The COA denied Ju's motions on October 3, 2017. Dkt. 1, ¶ 4.39. Then, Ju moved to clarify and to strike. *Id.* ¶ 4.40. On October 16, 2017, the COA issued a one-page clarification order that upheld its earlier denial of Ju's motions for reconsideration and publication. *Id.* ¶ 4.43. On November 16, 2017, the COA issued a mandate concluding the case. *Id.* ¶ 4.48.

---

[1] Quotes attributed to Ju are in the original and without correction of grammatical errors.

Ju also asserts claims against the Court Defendants, who were employees at the COA during the pendency of her appeal. Ju's factual allegations against the Court Defendants are confusing; Ju appears to allege a conspiracy related to routine clerical work. For example, on October 13, 2017, after the COA had denied her appeal, Ju saw a new docket entry, a notice of appearance, in the court docket. *Id.* ¶ 4.42. A few weeks later, one of the Court Defendants removed the notice of appearance from the docket. *Id.* ¶ 4.44. This removal concerned Ju, causing her to file a motion "for keeping the court's records intact," *id.* ¶ 4.48, and is a partial basis for her claim against the Court Defendants here. Dkt. 1.

Additionally, on November 6, 2017, a Court Defendant added a document from Lacombe to the court's docket. Ju believes that the Washington Rules of Appellate Procedure prohibited Lacombe from filing this particular response. So, Ju filed a same-day reply to Lacombe's letter, which she alleges was not entered into the docket. *Id.* ¶ 4.47. Ju believes that by titling Lacombe's document "response letter" and entering it into the docket as the final entry of that day, the clerk's action prejudiced her.[2] *Id.* ¶¶ 4.44–45.

On April 20, 2018, Ju filed a federal complaint, which asserts the following causes of action verbatim: (1) violation of the 7th and 14th Amendments; (2) Violation of Washington State Constitution Article I, §§ 3 & 21; (3) Violation of multiple Washington State statutes; (4) Deprivation of Constitutional Rights; (5) Conspiracy to Interfere with

---

[2] Ju does not explain precisely how this prejudiced her, but she alleges that the clerk purposefully ordered the docket entries to "cover up Mr. Lacombe's rules-violating 'Response Letter.'" Dkt. 1, ¶ 4.44.

ORDER - 4

Civil Rights; (6) Wrongful Eviction; (7) Breach of Contract; (8) Sexual Harassment and Sex Discrimination; (9) violation of the Consumer Protection Act; (10) Retaliation; (11) Outrageous Tort; (12) Injury Caused by Unlawful Erasing and Change of the Court's Records; and Ex-Parte Communications; and (13) Irreparable Injury. Dkt. 1.

On July 21, 2018, the State Defendants moved for dismissal. Dkt. 15. On August 13, 2018, Airbnb moved to compel arbitration. Dkt. 33. On August 21, 2018, the Court stayed discovery between Ju and the State Defendants pending the "threshold determination of immunities and jurisdiction." Dkt. 35 at 2.

On September 4, 2018, Ju responded to Airbnb and on September 10, 2018, Ju responded to the State Defendants. Dkts. 39, 41. On September 6, 2018, Airbnb replied. Dkt. 41. On September 14, 2018, the State Defendants replied. Dkt. 42.[3] Also on September 14, Ju noticed her intent to file a surreply to the State Defendants, and on September 19, 2018, Ju filed a surreply. Dkts. 43, 44.

On October 1, 2018, Ju filed a one-hundred-and-two page praecipe attaching the state court records and docket summaries. Dkt. 47. Ju related this filing to Dkt. 41, her response to the State Defendants' motion to dismiss. *Id.* The State Defendants did not object or otherwise move to strike Ju's praecipe, so the Court will consider it as part of the court file on which it decides the instant motions.[4]

---

[3] In their reply, the State Defendants withdrew their *Younger* abstention argument. Dkt. 42 at 4.

[4] The State Defendants ask this Court to take judicial notice of the Washington proceedings. Ju objects because one of her claims alleges that the COA failed to "keep its records intact." Dkt. 41 at 11. While it is proper for this Court to take judicial notice of proceedings in other tribunals, *see Shetty v. Wells Fargo Bank, NA*, 696 F. App'x 828, 829 (9th

## II. DISCUSSION

**A.  State Defendants**

The State Defendants move for judgment, arguing that Ju's claims are barred by sovereign immunity, judicial immunity, and the Anti-Injunction Act, and also fail to state a claim or provide a basis for subject matter jurisdiction. Dkt. 15. The Court agrees that Ju's claims against the State Defendants should be dismissed.

**1.  Legal Standards**

A federal court may not adjudicate matters in which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction to hear a direct appeal from the final judgment of a state court, because the United States Supreme Court "is the only federal court with jurisdiction to hear such an appeal." *Noel v. Hall*, 341 F. 3d. 1148, 1154 (9th Cir. 2003); *see also* 28 U.S.C. § 1257.

Motions to dismiss brought under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds

---

Cir. 2017) (district court did not abuse discretion by taking judicial notice of federal and state court proceedings), *cert. denied sub nom. Shetty v. Wells Fargo Bank, N.A.*, 138 S. Ct. 705 (2018), the Court will also consider Ju's praecipe filing of the state court records.

for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 540 U.S. 544, 555 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

### 2. Rooker-Feldman

Federal district courts are empowered to exercise original, not appellate, jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). The *Rooker-Feldman* doctrine prevents "state court losers complaining of injuries caused by state-court judgments" from seeking relief from those judgments in federal court. *Exxon*, 544 U.S. at 284.

In *Rooker*, the case giving rise to the *Rooker-Feldman* doctrine, plaintiff sued in federal district court seeking "to have a judgment of a state court, adverse to the federal court plaintiffs, declared 'null and void.'" *Id.* (quoting *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 (1923)). Reasoning that no court other than theirs could hear a proceeding to modify or reverse errors of that nature, the Supreme Court upheld the district court's dismissal for lack of jurisdiction. *Id.* at 416. In *Feldman*, a consolidated appeal providing the second half of the doctrine's name, the plaintiffs brought suit in federal court asserting the state court's allegedly erroneous legal rulings as the basis for their causes of action. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 468–469 (1983). The Supreme Court held, to the extent that plaintiffs sought to overturn the decision of the state court in the federal district court, that the district court lacked subject matter jurisdiction over the plaintiffs' complaints. *Id.* at 482.

In practice, the *Rooker-Feldman* doctrine comes into play when a disappointed party seeks "not a formal direct appeal, but rather its de facto equivalent." *Hall*, 341 F. 3d. at 1155. In determining whether a federal suit improperly functions as a de facto appeal, the court pays "close attention to the relief sought" by the plaintiff. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (internal citations omitted). When a federal district court determines that a de facto appeal of a state court decision is before it, it must refuse to hear the appeal. *Hall*, 341 F. 3d. at 1158. After refusing to hear the appeal, the district court must also refuse to decide any remaining issues if they are "inextricably intertwined" with an issue resolved by the state court decision. *Id.* at 1158.

Here, Ju attempts a de facto appeal. This is because she improperly seeks relief from state court proceedings where she did not prevail. The assertions within her complaint demonstrate as much.

> [I]t was inappropriate for Judge Gonzales' statements at the December 22, 2017, hearing that there was no violation of Chapter 59.18 RCW; and that there was no sexual harassment or sex discrimination. Judge Gonzales was well informed that the case was going to the Federal Court; and 7th and 14th Amendment and Wash. Const. art. I §§ 3 and 21 should be considered by Judge Gonzales instead of stating his unconstitutional conclusions in an open court, and before the Federal Court hears the case that arose from his unconstitutional and anti-statutes rulings, including wrongful eviction.

Dkt. 1, ¶ 4.49. Indeed, all of Ju's allegations against the State Defendants pertain to various aspects of the state court proceedings themselves. *See* Dkt. 41 at 10 ("complaint 4.23 shows that at the April 15, 2016 hearing, it did not seem that the Honorable Gregory Gonzlaes had even read Frances Ju's three pleading and documents. Judge Gonzales

could not even find the case file" and "Plaintiff [Ju] discussed RCW 59.18.380 extensively in her Motion for Reconsideration filed with the Court of Appeals Division II."). Thus, the factual underpinnings of Ju's claims, although confusing, demonstrate that she seeks redress in this Court in order to right alleged wrongs from the state court proceedings. Therefore, she is a "state court lose[r] complaining of injuries caused by state-court judgments" through improper appeal to the federal court. *Exxon*, 544 U.S. at 284. This is further confirmed by the evidence Ju relies on to support her federal lawsuit—voluminous records documenting the state court proceedings themselves. Dkt. 47.[5]

Moreover, Ju's requested relief further reveals the impetus for her claims. This is because Ju requests preliminary and permanent injunctions vacating the Clark County writ of restitution, judgment, and interest arising from the judgment, Dkt. 1 at 24, ¶ D, and a federal order of limited dissemination or an injunction requiring Clark County to issue an order "pursuant to RCW 59.18.367," *id.* ¶ E.

RCW 59.18.367 governs the issuance of limited dissemination orders in unlawful detainer cases in Washington, which, if entered, prohibit tenant screening reports dispersed in the state from disclosing a prospective tenant's prior unlawful detainer action. To enter an order of limited dissemination, a court is required to make a finding of

---

[5] Ju characterizes her submission of the state court records as a response to Clerk of Court William McCool's new civil filing (docketing) procedure for state and administrative records, which first became available October 1, 2018. Dkts. 44 at 3–4, 47. In any case, the conclusion is the same: Ju supports her federal claims with state court filings because Ju seeks relief from state court decisions.

good cause, or a finding that the underlying unlawful detainer action lacked basis in fact or law. *Id.* Thus, Ju seeks to use the federal court to both vacate a state court judgment adverse to her and to command the state court to issue an order contrary to its prior factual findings. *See Bianchi*, 334 F.3d at 898–99 (affirming dismissal under *Rooker-Feldman* when state court had already denied individual remedy plaintiff sought).

While Ju characterizes her claims as ongoing violations of federal statutes and the Seventh and Fourteenth Amendments in an attempt to distinguish them from an improper appeal, this does not withstand scrutiny. For example, Ju's Seventh Amendment argument appears to be that Judge Gonzales made a discretionary, fact-based ruling that concluded the unlawful detainer action in Lacombe's favor, while Ju wished to proceed to trial. Dkt. 41 at 11:1 ("Judge Gonzales prematurely issued a judgment and did not order a trial."). Alternatively, Ju may be claiming that because a jury did not decide her eviction case, the reexamination clause of the Seventh Amendment entitles her to a jury trial in federal court. *Id.* ("There was no jury involved on April 15, 2016. Plaintiff is entitled to relief under the Re-examination clause of the 7th Amendment."). Either way, both theories demonstrate that Ju seeks to relitigate in federal court what she has already lost in state court, consistent with an impermissible de facto appeal. Moreover, Ju cannot gain federal review by dressing her injury in constitutional language. *Bianchi*, 334 F.3d at 900–901 (affirming under *Rooker-Feldman* when injury stemmed from state court judgment, despite other constitutional claims). [6] Nor can Ju avoid dismissal under

---

[6] The analysis is not changed by the COA decision's silence on Ju's constitutional claims. *Bianchi*, 334 F.3d at 900 ("The *Rooker-Feldman* doctrine does not require us to determine

*Rooker-Feldman* simply by alleging that public officials conspired against her during the state court proceedings. *See Cooper v. Ramos*, 704 F.3d 772, 780–783 (9th Cir. 2012) (affirming dismissal of claims alleging that government officials conspired during murder investigation, trial and DNA-testing process and that prosecutor and criminalist conspired to deny plaintiff a fair trial under *Rooker-Feldman*).

In sum, Ju seeks to overturn the state court decisions here in federal court. Ju's claims are thus the functional equivalent of an appeal, which the district court may not hear under the *Rooker-Feldman* doctrine. Accordingly, the Court grants the State Defendants' motion to dismiss on this issue.

### 3. Judicial Immunity

Ju asserts that she sues for declatory relief based on Judge Gonzales' judicial acts. Dkt. 41 at 9–11. To the extent that Ju brings claims against the State based upon the judicial decisions of Judge Gonzales, judicial immunity precludes such a claim. *Stump v. Sparkman*, 435 U.S. 349 (1978). To the extent that Ju brings claims against the Court Defendants for a docketing-related conspiracy at the COA, judicial immunity also precludes such a claim. *Mireles v. Waco*, 502 U.S. 9 (1991); *Giampa v. Duckworth*, 586 F. App'x 284, 284 (9th Cir. 2014) (unpublished) (affirming dismissal of claims against judges and court clerks).

---

whether or not the state court fully and fairly adjudicated the constitutional claim.). Nor does it matter that the COA's memorandum opinion was brief. *Craig v. State Bar of Cal.*, 141 F.3d 1353, 1355 n.3 (applying *Rooker-Feldman* where California Supreme Court denied plaintiff's petition for review without comment).

Ju's pleadings indicate that she sues the Court Defendants in their individual capacities. Dkt. 41 at 5:13–15. However, Ju has failed to establish a cognizable legal theory or plead sufficient facts that would support individual capacity claims against the Court Defendants. *Balistreri*, 901 F.2d at 699. This is further illustrated by the relief she seeks, directing those officials to overturn the decisions of the Washington courts. Therefore, the Court grants the State Defendants' motion to dismiss on this issue.

### 4. Sovereign Immunity

The Eleventh Amendment deprives federal courts of jurisdiction "over suits by private parties against unconsenting States." *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 953 (9th Cir. 2008). Here, the State has not consented to suit under the Eleventh Amendment.[7] Ju's claims are thus barred by the Eleventh Amendment unless an exception applies.

The *Ex parte Young* exception generally allows federal courts "to order prospective relief . . . as well as measures ancillary to appropriate prospective relief" against a state or state officials sued in their official capacities acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted). As discussed above, Ju does not seek true prospective relief. *See National Audobon Society, Inc. v. Davis*, 307 F.3d 835, 847–48 (9th Cir. 2002) (noting that relief is retrospective if a claimant seeks a declaration that state officials violated plaintiff's rights

---

[7] Ju's federal funding/consent argument falls flat because the Court has determined that her claims under 42 U.S.C. §§ 1983 and 1985(3) fail for lack of jurisdiction. Moreover, to the extent that Ju seeks to sue the State for sexual harassment or sex discrimination, she fails to plead a factual or cognizable claim. *See* Dkt. 1 at 20–21, 23.

1 | in the past). Because Ju's claims seek improper retrospective relief, the *Ex parte Young*

2 | exception does not apply, and the State is shielded by the Eleventh Amendment.

3 | Accordingly, the Court grants the State Defendants' motion on this issue.

### 5. Appropriate Relief

The only remaining issue is whether Ju should be granted leave to amend her complaint. Dismissal of a complaint without leave to amend is proper where it is clear that the complaint could not be saved by amendment. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Here, Ju's claims constitute an improper collateral attack on a state court judgment and fail as a matter of law under principles of judicial immunity, sovereign immunity, and subject matter jurisdiction. The Court therefore concludes that any amendment would be futile. Ju's complaint against the State Defendants should be dismissed with prejudice.

## B. Arbitration

Turning to the next motion, Airbnb seeks to compel Ju to arbitration. Dkt. 33. The party seeking to compel arbitration has the burden of proving that an arbitration agreement exists and that it applies to the dispute at issue. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)). Airbnb has established that an arbitration agreement exists between Ju and Airbnb and that the agreement applies to Ju's claims. Dkt. 33–3. Ju does not oppose arbitration. Dkt. 39, 6:17–18 ("Plaintiff thinks that arbitration might be the way for the parties to resolve the case"), 6:24 ("Plaintiff

respectfully requests that this Court assign an arbitrator for this matter."). Accordingly, the Court compels Ju and Airbnb to arbitration.

Once the court determines that issues before it are suited to arbitration, § 3 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* requires the court to stay litigation upon application of a party until the arbitration concludes. Airbnb has requested such a stay. Dkt. 33 at 13. Thus, a stay is warranted as to Ju's claims against Airbnb.

**C.     Remaining Litigation**

Airbnb and Lacombe are now the sole remaining defendants. Ju and Airbnb will proceed to arbitration. Although Ju initially had difficulty locating Lacombe, he recently registered for electronic filing, filed an answer, and began participating in the case. Dkts. 49, 51–53. Moving forward, the Court cautions Ju and Lacombe to refrain from improper use of the praecipe filing event. *See* Dkts. 50, 53; Local Civil Rules W.D. Wash. LCR 7(m). The Court encourages the two pro se parties to expeditiously work to narrow or resolve the remaining claims through motions practice.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Airbnb's motion to compel arbitration, Dkt. 33, and the State Defendants' motion to dismiss, Dkt. 15, are **GRANTED.**

Ju's claims against Airbnb are compelled to arbitration and litigation between Ju and Airbnb is stayed pending its completion. Either Ju or Airbnb shall inform the Court when arbitration is completed.

The claims against the State Defendants are **dismissed with prejudice**, and the Clerk shall terminate the State Defendants.

Dated this 5th day of December, 2018.

_____
BENJAMIN H. SETTLE
United States District Judge